1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DEVONTE B. HARRIS,

              Plaintiff,

    v.

K. KYLE, et al.,

              Defendants.

Case No.  1:19-cv-00462-DAD-EPG

FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED

(ECF No. 65)

OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS

      Plaintiff Devonte B. Harris ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Before the Court is Defendants Kyle, Thompson, Castillo, Wright, Overly, Grossman, Gamez, Moreno, and Depovic's ("Defendants") motion for summary judgment. (ECF No. 65.) The matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. For the following reasons, the Court recommends that the motion be granted.

## I.    BACKGROUND

### A.    Summary of Plaintiff's Claims

      Plaintiff commenced this action on April 9, 2019. (ECF No. 1.) Plaintiff's complaint alleges, in relevant part, that Defendants' conduct caused Plaintiff to be assigned to and/or placed in cells without a window, resulting in Plaintiff attempting suicide and enduring pain and suffering, mental anguish, and emotional distress, all in violation of the Eighth Amendment. (*Id.*)

Specifically, Plaintiff alleges that the sensory deprivation cells in Short Term Restricted Housing ("STRH") at California State Prison, Corcoran ("CSP Corcoran") "have no window allowing natural light" and cause Plaintiff to be actively suicidal. (ECF No. 1 at 8-9.)

Plaintiff alleges that he was housed in Long Term Restricted Housing ("LTRH") until September of 2016, when CSP Corcoran staff attempted to move Plaintiff to STRH. (*Id.* at 10.) Plaintiff reported suicidal thoughts and was placed on suicide watch. (*Id.*) On September 6, 2016, Dr. Jordan issued a chrono prohibiting Plaintiff from being housed in STRH for mental health reasons. (*Id.*) On September 8, 2016, Defendant Kyle authored another chrono "under false pretenses" which allowed Plaintiff to be housed in STRH and overrode Dr. Jordan's chrono. (*Id.* at 11.) Plaintiff also alleges that he informed Defendants Grossman, Thompson, Depovic, and Moreno of his suicidal thoughts in STRH at a December 26, 2017 Inter-Disciplinary Treatment Team ("IDTT") meeting and they did not act or document this. (*Id.* at 14-15.)

Plaintiff's complaint also alleges that Defendants violated Plaintiff's Eighth Amendment rights by placing him in the Indecent Exposure ("IEX") Program, which was a non-segregated environment with protective custody inmates, resulting in confrontations between Plaintiff and protective custody inmates that caused Plaintiff to suffer a "bruised foot, burning sensation, pain and suffering from physical confrontations staged by staff and broken up with pepper spray involving protective custody inmates and I." (ECF No. 1 at 19.) Plaintiff alleges that he informed Institutional Classification Committee ("ICC") members Defendants Overly, Kyle, Moreno, Castillo, Gamez, and Wright that he would harm protective custody inmates if placed in the IEX Program, and that a staff member notified Defendant Dewey of Plaintiff's plan, but they did nothing to prevent the violence. (*Id.* at 19-20.)

Finally, the complaint alleges that the ICC violated Plaintiff's First Amendment rights by placing him in the IEX Program in retaliation for filing grievances and lawsuits. (ECF No. 1 at 21.)

**B.    Screening Order**

On May 28, 2019, the Court screened Plaintiff's complaint and found that it "states cognizable claims for deliberate indifference to serious risk of harm in violation of the Eighth Amendment against Defendants Kyle, Grossman, Thompson, Depovic, Moreno, Overly, Wright,

Gamez, and Castillo; and a cognizable claim for retaliation in violation of the First Amendment against Defendants Kyle, Moreno, Wright, Overly, Gamez, and Castillo." (ECF No. 10. at 15.) As to the Eighth Amendment claim for housing Plaintiff in STRH, the Court found that Plaintiff alleged an Eighth Amendment deliberate indifference claim as to Defendants Kyle, Grossman, Thompson, Depovic, and Moreno (the "STRH Defendants"). (*Id.* at 11-12.) The Court explained:

> the allegations of the Complaint are sufficient to meet the objective element of an Eighth Amendment deliberate indifference claim. According to the Complaint, Plaintiff suffers from documented serious mental disorders of depression, anxiety, claustrophobia, and a panic disorder, which have been documented since at least 2005, and that placing Plaintiff in a sensory deprivation cell, such as a cell without windows, has a negative impact on Plaintiff's mental health, including causing active suicidal ideation. These allegations are sufficient to establish a substantial risk of serious harm to Plaintiff if housed in a sensory deprivation cell, such as one without windows.
>
> As to the subjective element, the allegations of the Complaint are sufficient to meet the subjective element as to Defendants Kyle, Grossman, Thompson, Depovic, and Moreno.
>
> a. Defendant Kyle
>
> The Complaint alleges that Kyle personally knew of Harris's decompensation when housed in STRH due to his mental health conditions; that despite this knowledge, Kyle maliciously authored a chrono stating that Plaintiff did not have any mental health conditions or symptoms that would prevent Plaintiff from being housed in a STRH cell; that Kyle authored this chrono in order to override Jordan's chrono, which prohibited Plaintiff from being housed in a STRH cell, and to portray Plaintiff as malingering; and that mental health staff at CSP-Sacramento relied on Kyle's chrono to override Jordan's chrono, resulting in Plaintiff being placed into a STRH cell and attempting suicide. Thus, according to the allegations, Kyle knew that Plaintiff faced a substantial risk of serious harm to his mental health and potentially also to his physical health if placed into a STRH cell, and disregarded, and failed to take reasonable measures to avoid, that risk. These allegations are sufficient to state a claim against Defendant Kyle for deliberate indifference to a serious risk of harm to Plaintiff.
>
> b. Defendants Grossman, Thompson, Depovic, and Moreno
>
> The Complaint alleges that Defendants Grossman, Thompson, Depovic, and Moreno held an IEX program IDTT meeting; that Plaintiff informed them during this meeting of his suicidal thoughts when housed in STRH and Jordan's chrono prohibiting Plaintiff from being housed in STRH; and that, despite receiving this information, none of these Defendants acted on or documented the risk. The Court finds these allegations, viewed liberally in the light most favorable to Plaintiff, indicate that these Defendants knew that Plaintiff faced a substantial risk of serious harm if he was placed into a STRH cell; and that they disregarded, and failed to take reasonable measures to avoid, that risk. Accordingly, the allegations are sufficient to state a claim against Defendants Grossman, Thompson, Depovic, and Moreno for deliberate indifference to a serious risk of harm to Plaintiff.

3

1   (*Id.* at 10-11.)

2       The Court also found that Plaintiff's allegations regarding his placement in the IEX

3   Program were "sufficient to meet the objective component of an Eighth Amendment deliberate

4   indifference claim as the allegations establish a substantial risk of serious harm to Plaintiff if

5   Plaintiff is placed into the IEX program with, and housed with, protective custody inmates" and

6   were sufficient to meet the subjective element as to Defendants Kyle, Overly, Wright, Moreno,

7   Gamez, Castillo, and Thompson (the "IEX Defendants"). (ECF No. 10 at 11-13.) The complaint

8   also sufficiently alleged a First Amendment retaliation claim against Defendants Overly, Kyle,

9   Gamez, Castillo, Wright, and Moreno (the "Retaliation Defendants") arising out of Plaintiff's

10  placement in the IEX Program. (*Id.* at 14-15.)

        The Court found that Plaintiff's complaint failed to state any other cognizable claims.
11
    (ECF No. 10. at 15.) Plaintiff was given the option to choose between proceeding only on the
12
    claims found cognizable, amending the complaint, or standing on the complaint subject to the
13
    Court issuing findings and recommendations to a United States District Judge consistent with the
14
    screening order. (*Id.*)
15
        On June 19, 2019, Plaintiff notified the Court that he was willing to proceed only on the
16
    claims found cognizable in the screening order. (ECF No. 14.) The Court accordingly issued
17
    findings and recommendations consistent with the screening order and, on October 21, 2019.
18
    (ECF No. 17.) District Judge Drozd issued an order adopting the findings and recommendations
19
    on October 21, 2019. (ECF No. 31.)

20          **C.      Plaintiff's Motion to Amend**

21      On July 17, 2020, Plaintiff filed a motion to amend his complaint. (ECF No. 49.) Plaintiff

22  sought leave to state an excessive force claim against three new defendants: H. Gamboa, H.

23  Figuroa, and P. Ramos, as well as a deliberate indifference claim against another new defendant,

24  E. Torres. (*Id.*) Plaintiff lodged a First Amended Complaint that, in relevant part, including

25  allegations regarding an excessive force incident on May 2, 2018, and Defendant Kyle's

26  subsequent failure to properly evaluate Plaintiff, causing Plaintiff to attempt suicide. (ECF No. 50

27  at 15-20.) Specifically, the proposed First Amended Complaint's new allegations included, in

28  relevant part:

On 5/2/18, staff lured Harris from MHCB promising an evaluation of his suicidal thoughts upon arrival to STRH. Upon arrival to STRH, Gamboa dismissed Harris's reports of suicidal ideation. She directed escorting staff to not place Harris in the holding cage for suicide evaluation. Gamboa orders to Ramos, Figueroa and Aboytes were to take Harris straight to cell in spite of his pleas to be placed in a holding cage for suicidal evaluation. At Gamboa's behest, Ramos, Figueroa and [A]boytes slammed Harris to ground, kicked him, put their knee on his neck asphyxiating him and twisted his fingers, limbs and feet into unnatural motions. They then placed Harris in a wheel chair and rolled him to STRH cell and dumped here there.

Harris requested an excessive force interview. They ignored that request too. Torres did not medically evaluate Harris as required. She did not document his injuries, report his suicidal thoughts or his excessive force complaint.

Harris and other inmates continued to yell out their cell doors that Harris was suicidal. Licensed Clinical Social Worker Laura Edmonds responded to Harris's cell. He reported suicidal thoughts to her. Edmonds informed custody staff that Harris was suicidal and requested they place him in a therapeutic module so that she could evaluate him. C/O Reeves approached Edmonds and told her Gamboa wanted to speak with her. Gamboa, while sitting with another officer, told Edmonds Harris was lying about being suicidal, he would not be taken out of his cell because they would have to use force to rehouse him. Edmonds told Gamboa force did not concern her, safety protocols called for visual assessment and that safety measures should be taken to eliminate risk of suicide. Gambo refused to follow the suicide prevention protocols. Edmonds placed an emergency mental health referral and notified her supervisor in STRH Kyle.

A couple hours later, Kyle went to Harris's cell. She said she came by to "chat." Harris was standing on his sink tying a noose he had made out of his t-shirt to the vent. He jumped off his sink and went to his cell door. Harris told Kyle he felt suicidal. Kyle stated he had to contact Coleman lawyers about being housed in STRH. Harris asked why she overrode Jordan's chrono with a bogus one of her own. She stated that mental health staff don't override custody. Harris told her he would commit suicide in STRH. Kyle said "bye Harris" and left his cell.

Kyle then went and falsified a suicide risk evaluation of Harris. She falsely claimed that Harris did not have a plan to commit suicide although Edmonds had already documented he planned to hang himself. She falsely claimed Harris had not wished he was dead and had not had thoughts of killing himself in the past month despite multiple MHEB placements within the month for the very reasons. She falsely documented that Harris did not suffer recent/current depressive symptoms. She falsely documented that Harris did not suffer recent/current anxiety or panic symptoms. Kyle asked Harris none of the questions required for a suicide evaluation but then falsely attributed her own answers to him—some of which were blatantly untrue.

About 15 minutes after Kyle left, Harris finished tying a noose made from ripped strips of his t-shirt to the vent.

(ECF No. 50 at 15-19) (paragraph numbering omitted, and paragraph structure altered).)

Defendants filed an opposition to the motion on August 7, 2020. (ECF No. 51.) Plaintiff did not

5

1   file a reply.

2          On September 29, 2020, the Court entered findings and recommendations recommending

3   that the motion to amend be denied. (ECF No. 59.)  The Court noted that Plaintiff had agreed to

4   proceed only on the claims found cognizable in the screening order more than a year before his

5   motion was filed, even though he had been given an opportunity to amend his complaint. (*Id.* at

6   3-4.) Additionally, allowing amendment would result in additional, unnecessary, and undue

7   delay. (*Id.* at 4.) On October 29, 2020, Plaintiff filed objections to the findings and

8   recommendations. (ECF No. 64.) On December 3, 2020, District Judge Dale A. Drozd entered an

9   order adopting the Court's findings and recommendations in full. (ECF No. 70 ("[A]llowing

10  plaintiff to amend his complaint at this time would result in additional, unnecessary, and undue

11  delay in this proceeding . . . [and] 'undue delay would result in significant prejudice to the current

12  defendants.'") (citation omitted).)

## II.   MOTION FOR SUMMARY JUDGMENT

### A.   Defendants' Motion

14         Defendants filed their motion for summary judgment on May 10, 2021. (ECF No. 99-2.)

15  First, the STRH Defendants argue that Plaintiff cannot show an Eighth Amendment violation

16  regarding his placement in STRH because there is no evidence that he was at substantial risk of

17  serious harm when retained there. (*Id.* at 22.) Additionally, in light of the undisputed facts

18  Plaintiff cannot show that the STRH Defendants were subjectively deliberately indifferent to any

19  risk during their interactions with Plaintiff. (*Id.* at 23-24.) The STRH Defendants also argue that

20  they were not the cause of any harm to Plaintiff. (*Id.* at 24-25.)

21         The IEX Defendants also argue that there was no substantial risk of serious harm to

22  Plaintiff by being placed in the IEX program because Plaintiff "failed to identify any specific and

23  imminent danger to himself." (*Id.* at 25-26.) Likewise, the IEX Defendants did not subjectively

24  know of any risk and did not act with deliberate indifference to Plaintiff's safety or mental health

25  condition. (*Id.* at 26-27.) The IEX Defendants also were not the cause of Plaintiff's harm. (*Id.* at

26  27-28.)

27         The Retaliation Defendants contend that Plaintiff's First Amendment claim fails because

28  there is no evidence of a retaliatory motive, Plaintiff's placement in the IEX Program was not an

adverse action, and the placement furthered legitimate correctional goals. (ECF No. 99-2 at 28-29.)

Finally, Defendants argue that they are entitled to qualified immunity and that Plaintiff failed to exhaust his IEX Program claims against Defendants Overly, Moreno, Castillo, Gamez, and Wright. (ECF No. 99-2 at 29-31.)

**B.      Plaintiff's Opposition**

Plaintiff filed his opposition on February 7, 2021.[1] (ECF No. 127.) As to the Eighth Amendment claim related to Plaintiff's placement in STRH, Plaintiff's opposition largely details events surrounding an incident on May 2, 2018, when Defendant Kyle authored a suicide risk evaluation of Plaintiff without properly evaluating him and Plaintiff subsequently attempted suicide. (*Id.* at 10-21.) Additionally, Plaintiff contends that the remaining STRH Defendants' failure to address Plaintiff's STRH placement issues at the December 26, 2017 IDTT amounted to deliberate indifference. (*Id.* at 23-27.)

Plaintiff further argues that summary judgment should be denied as to the Eighth Amendment claim regarding his placement in the IEX Program because it was reasonably foreseeable that Plaintiff would harm protective custody inmates. (ECF No. 127 at 28-35.) Additionally, Plaintiff was pepper sprayed by staff because Defendants allowed Plaintiff to be housed around protective custody inmates. (*Id.* at 35-36.)

Plaintiff also asserts that Defendants are not entitled to qualified immunity. (ECF No. 127 at 36.) Finally, Plaintiff was not required to further exhaust his grievance because Plaintiff had been admitted to a mental health crisis bed and he therefore did not have an opportunity to submit his appeal. (*Id.* at 37-39.)

**C.      Defendants' Reply**

Defendants filed their reply on March 8, 2022.[2] (ECF No. 132.) Defendants restate the arguments in their motion and contend that Plaintiff has failed to present competent evidence that would create a material issue of fact on his Eighth Amendment claims. (*Id.* at 6-12.) Additionally, Plaintiff's opposition fails to address the First Amendment retaliation claims. (*Id.* at 12.)

---

[1] Plaintiff filed nine requests to extend his opposition deadline, eight of which the Court granted in full or in part. (*See* ECF Nos. 103-104, 109-110, 112-113, 116-117, 118, 120-24, 126, 129.)
[2] Defendants requested, and the Court granted, an extension of time to file the reply. (ECF Nos. 130, 131.)

1  Defendants further argue that Plaintiff's opposition as to the Eighth Amendment STRH claim

2  relies on the events surrounding his May 2, 20218 interaction with Defendant Kyle, but the

3  complaint did not raise this theory or put Defendants on notice of this claim. (*Id.* at 12-13.)

4  **III.    SUMMARY JUDGMENT LEGAL STANDARDS**

5  Summary judgment in favor of a party is appropriate when there "is no genuine dispute as

6  to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

7  56(a); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine

8  dispute about material facts, summary judgment will not be granted.").  A party asserting that a

9  fact cannot be disputed must support the assertion by "citing to particular parts of materials in the

10  record, including depositions, documents, electronically stored information, affidavits or

11  declarations, stipulations (including those made for purposes of the motion only), admissions,

12  interrogatory answers, or other materials, or showing that the materials cited do not establish the

13  absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

14  evidence to support the fact."  Fed. R. Civ. P. 56(c)(1). The Court may consider other materials in

15  the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3);

16  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

17  A party moving for summary judgment "bears the initial responsibility of informing the

18  district court of the basis for its motion, and identifying those portions of 'the pleadings,

19  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

20  any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

21  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "In order to carry its

22  burden of production, the moving party must either produce evidence negating an essential

23  element of the nonmoving party's claim or defense or show that the nonmoving party does not

24  have enough evidence of an essential element to carry its ultimate burden of persuasion at

25  trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000). If

26  the moving party moves for summary judgment on the basis that a material fact lacks any proof,

27  the Court must determine whether a fair-minded jury could reasonably find for the non-moving

28  party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a

1  scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

2  evidence on which the jury could reasonably find for the plaintiff.")   "[A] complete failure of

3  proof concerning an essential element of the nonmoving party's case necessarily renders all other

4  facts immaterial." *Celotex*, 477 U.S. at 322.  Additionally, "[a] summary judgment motion

5  cannot be defeated by relying solely on conclusory allegations unsupported by factual data."

6  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

7         In reviewing the evidence at the summary judgment stage, the Court "must draw all

8  reasonable inferences in the light most favorable to the nonmoving party."  *Comite de Jornaleros*

9  *de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011).  It need only

10  draw inferences, however, where there is "evidence in the record … from which a reasonable

11  inference … may be drawn…"; the court need not entertain inferences that are unsupported by

12  fact.  *Celotex*, 477 U.S. at 330 n. 2 (citation omitted).  Additionally, "[t]he evidence of the non-

13  movant is to be believed . . .."  *Anderson*, 477 U.S. at 255.

14         **IV.   DISCUSSION**

15         **A.   Eighth Amendment Claims**

16         1.   <u>Eighth Amendment Legal Standards</u>

17         "The treatment a prisoner receives in prison and the conditions under which he is confined

18  are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832

19  (1994) (citation omitted). Prison officials have a duty "to take reasonable measures to guarantee

20  the safety of inmates, which has been interpreted to include a duty to protect prisoners." *Labatad*

21  *v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Farmer*, 511 U.S. at

22  832–33; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)). To establish a violation of this

23  duty, the prisoner must "show that the officials acted with deliberate indifference to threat of

serious harm or injury to an inmate." *Labatad*, at 1160 (citation omitted).

24         A prison official violates the Eighth Amendment only when two requirements are met: (1)

25  objectively, the official's act or omission must be so serious such that it results in the denial of the

26  minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have

27  acted unnecessarily and wantonly for the purpose of inflicting harm. *See Farmer,* 511 U.S. at 834.

28

For the objective component, the alleged deprivation must be "sufficiently serious" and where a failure to prevent harm is alleged, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

A substantial risk of serious harm in the form of "[a] 'serious medical need exists if the failure to treat a prisoner's condition could result in (1) further significant injury or (2) the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997) (en banc) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). The Ninth Circuit has recognized that "[a] heightened suicide risk or an attempted suicide is a serious medical need." *Conn v. City of Reno*, 491 F.3d 1091, 1095 (9th Cir. 2010), *vacated* 563 U.S. 915 (2011), *opinion reinstated in relevant part,* 658 F.3d 897 (9th Cir. 2011).

For the subjective component, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. A prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and...must also draw the inference." *Id.* Liability may follow only if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847; *see also id.* at 835, 36-37 (explaining that "deliberate indifference entails something more than mere negligence...[but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result"; and defining "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware").

Additionally, "[p]rison administration is a difficult and onerous task and courts have traditionally accorded a large degree of deference in cases involving the administration of state penal institutions." *Jimenez v. Diaz*, 2019 WL 5541372, at *4 (E.D. Cal. Oct. 28, 2019), *report and recommendation adopted*, 2020 WL 1911570 (E.D. Cal. Apr. 20, 2020) (citation omitted); *see also Turner v. Safley*, 482 U.S. 78, 85 (1987) (noting that prison officials are afforded widest latitude in cases involving the administration of state prisons). Accordingly, courts grant prison officials substantial deference with respect to housing determinations. *Villery*

*v. California Dep't of Corr.*, 2020 WL 7651976, at *3 (E.D. Cal. Feb. 25, 2020).

2.     Placement in STRH

Plaintiff's first claim for violation of his Eighth Amendment rights relates to his heightened risk of suicide when placed in STRH. (*See* ECF No. 10 at 10.) Plaintiff alleges that Defendant Kyle authored a September 8, 2016 chrono stating that Plaintiff did not have any mental health symptoms preventing him from being housed in STRH, which overrode a September 6, 2016 chrono written by Dr. Jordan, who was treating Plaintiff at the time. (ECF No. 10 at 4, 10.) Plaintiff's claim against Defendants Grossman, Thompson, Depovic, and Moreno, in turn, is based on allegations that, during the December 26, 2017 IDTT, Plaintiff informed these defendants that he became suicidal while housed in STRH and none of them acted on or documented the risk. (*Id.* at 5, 10-11.)

The STRH Defendants move for summary judgment on four grounds: 1) there was not a substantial risk of serious harm to Plaintiff in STRH; 2) the STRH Defendants were not aware of or deliberately indifferent to any substantial risk of serious harm; 3) the STRH Defendants were not the cause of Plaintiff's harm; and 4) the STRH Defendants are entitled to qualified immunity. (ECF No. 99-2 at 22-24, 30.)

For the following reasons, the Court recommends that the STRH Defendants be granted summary judgment on Plaintiff's Eighth Amendment claim arising out of his placement in STRH.

a.  *Objective Deliberate Indifference*

The STRH Defendants first argue that there was not a substantial risk of serious harm to Plaintiff from being placed in STRH. (ECF No. 99-2 at 22.) Plaintiff's claim in his complaint about being suicidal when put in STRH related to his allegation that the do not receive natural light. However, the undisputed facts show that the STRH cells do receive natural light from a skylight. (*See* ECF No. 99-3 at 4 ("Each cell in the Standalone Buildings at Corcoran has a skylight that does not provide a direct outdoor view, but does receive natural light from the light that enters through the rafters.").) Further, the only evidence of such a risk is Plaintiff's "self-reported conditional suicidality" and this was "belied by his history of secondary-gain motivations." (ECF No. 99-2 at 22.) In other words, Defendants argue that Plaintiff does not actually have a heightened risk of suicide from STRH, but rather that Plaintiff claims this because

11

he does not want to be housed in those types of cells.  Moreover, regarding the specific decisions at issue in the complaint, Plaintiff was not in STRH at the time of his December 26, 2017 IDTT, had not been there for fifteen months, and there were no plans for him to be placed there in the near future. Plaintiff was not diagnosed with agoraphobia or claustrophobia and had no documented suicide attempts in STRH or otherwise. STRH also implemented a variety of suicide-prevention measures.

Plaintiff, in turn, argues that he has a documented panic disorder, with a specific phobia to confinement. (ECF No. 127 at 8-9.) Plaintiff also had several admissions to suicide watch in relation to being placed in STRH. (*Id.* at 9.) Plaintiff contends that he has agoraphobia as defined in an Inmate Disciplinary Process Mental Health Assessment Student Resource Manual that he attaches to his opposition. (*Id.* at 8-9, 213.)

Defendants have presented undisputed evidence that Plaintiff is not at a serious risk of serious harm from deprivation of natural light from being placed in STRH.  Although Plaintiff alleged in his complaint that he was at heightened suicide risk because STRH cells did not have natural light, (*see, e.g.,* ECF No. 1 at 8-9 ("Naturally, these conditions uniquely predispose Harris to decompensating being so inhumane that it prevents exposure to natural light. . . . sensory deprivation cells in the Short Term Restricted Housing (STRH) are modeled after the Pelican Bay SHU and have no window allowing natural light. . . . . Like STRH, [LTRH] is a segregation unit. However, LTRH cells have windows allowing natural light.")), Defendants have presented undisputed evidence that the STRH cells receive natural light. (*See* ECF No. 99-3 at 4.) The STRH Defendants submit declarations from Defendant Kyle and from P. Williams, the Litigation Coordinator at CSP Corcoran, stating that the cells in STRH have skylights that do not provide direct outdoor views but provide natural light from above. (ECF Nos. 99-13 at 2, 99-8 at 5-6.) The STRH Defendants also submit photographs of the STRH cells showing the natural light from the skylights. (ECF No. 99-17 at 4.) Plaintiff's opposition does not contest that the STRH cells receive natural light. (*See* ECF No. 127.)

The Court finds that the STRH Defendants have met their initial burden at summary judgment of showing that Plaintiff does not have enough evidence of a substantial risk of serious harm from being placed in cells without access to natural light. The burden therefore shifts to

Plaintiff to produce evidence of a heightened risk of suicide from placement in STRH cells themselves, even those with natural light. Plaintiff has failed to meet this burden.

Plaintiff's opposition relies on his own reports of feeling suicidal while in STRH and was referred to a Mental Health Crisis Bed ("MHCB") on September 2, 2016. (ECF No. 99-3 at 5.) Plaintiff "made similar complaints" on September 7, 2016, and Plaintiff reported suicidal thoughts on September 8, 2016. (ECF No. 99-3 at 5-6.) Plaintiff also submits progress notes dated February 15, 2005, listing "Panic Disorder w/o Agoraphobia R/O Specific Phobia to confinement" under "Diagnostic Impression." (ECF No. 127 at 42.) These progress notes also state that "[t]here may be some claustrophobia." (*Id.*) Plaintiff also cites to mental health treatment plans dated June 3, 2009, and November 25, 2014, which reference a history of mood disorder with anxiety and panic attacks, as well as Plaintiff's reports of feeling claustrophobic in his cell if he is held there for "too long." (*Id.* at 44, 46.) Plaintiff also submits evidence that he was placed in MHCB on multiple occasions, including on September 3, 2016, September 4, 2016, and September 7, 2016. (ECF No. 127 at 9, 48-49.) Plaintiff was placed in STRH and attempted suicide on May 2, 2018. (*Id.* at 17.)

Defendants respond to this evidence by arguing that "the only evidence [Plaintiff] has of an objectively substantial risk of serious harm is his self-reported conditional suicidality in STRH" that was "belied by his history of secondary-gain motivations." (ECF Nos. 99-2 at 22, 132 at 7.) In other words, Defendants argue that there is no objective evidence that STRH (with natural light) poses a serious risk of suicide for Plaintiff.  Rather, Plaintiff only points to his own statements that he felt suicidal in STRH, which they claim was done in order to change his housing status.  STRH Defendants cite progress notes from Dr. Jordan dated September 8, 2016, which state:

> S. The inmate was discharged from AHU and MHCB LOC yesterday and is waiting for housing. There is a question about whether or not he is suitable to be placed in Standalone ASU. A further assessment seems indicated. Ms. Kyle informed me that she and the Chief of Mental Health will make some determinations on where he should be housed today. The inmate thanked me for writing the 'memo' as he put it. A chrono was previously written where I precluded placement in the Standalone ASU buildings until a mental health assessment concluded he was safe to be there.
>
> O. The inmate may be malingering suicidality for secondary reasons. It is not clear and he is cooperative and not suicidal with the current action stated above. His

1   mood seems improved.

2   (ECF No. 99-17 at 12; *see also* ECF No. 99-2 at 22.)

3       The STRH Defendants also cite to progress notes dated September 7, 2016, stating that

4   Plaintiff "reported SI without a plan if he has to go to Ad Seg." (ECF No. 99-17 at 10.) Plaintiff's

5   behavior was cooperative and his psychomotor, speech, attention/concentration, and judgment

6   were within normal limits, his cognition was alert, and thought process was coherent, although his

7   affect was anxious, mood was depressed, and insight was impaired. (*Id.*) Regarding suicidality,

8   Plaintiff was described as "SI Passive/conditional" with no previous suicide attempts. (*Id.*) The

9   progress notes further stated "IP does not meet the criteria for a MHCB. IP does not want his

10  medications adjusted. IP does not have . . . claustrophobia only symptoms of anxiety." (*Id.*) The

11  STRH Defendants also rely on a Suicide Risk Assessment Checklist dated July 28, 2006,

12  describing Plaintiff's suicidal ideations as "conditional" as well as progress notes dated August

13  17, 2016, stating that Plaintiff "is trying to change therapists and try to engage in activities that

14  will prevent his transfer." (ECF No. 99-17 at 14.)

15      Taken as a whole, the evidence before the Court indicates that, at the time of Defendant

16  Kyle's September 8, 2016 chrono and the December 26, 2017 IDTT, Plaintiff had some mental

17  health needs and, at most, a generalized suicide risk rather than the "heightened suicide risk"

18  attached to being placed in STRH.  *Conn,* 591 F.3d at 1095; *see also Vivanco v. California Dep't*

19  *of Corr. & Rehab.,* 2019 WL 2764397, at *6 (E.D. Cal. July 2, 2019), *aff'd,* 817 F. App'x 492

20  (9th Cir. 2020) (recommending granting summary judgment where the plaintiff submitted

21  evidence of "a generalized risk of suicide rather than the heightened risk required to establish

22  deliberate indifference"). The medical records Plaintiff cites document Plaintiff's diagnoses of a

23  panic disorder and mood disorder, as well as his reports of feeling claustrophobic[3] if held in cells

24  generally. They do not reference suicidal ideations or note particular suicide risks from being

25  placed in STRH. *See Doty v. Cnty. of Lassen,* 37 F.3d 540, 546 ("A 'serious' medical need

26  requires an ailment of a greater magnitude or with a cause separate from confinement."). Plaintiff

---

27  [3] Although Plaintiff argues that the definition of agoraphobia fits him, he does not submit any evidence of a
diagnosis or other records establishing that he has such a condition and only produces evidence of the definition
itself. (*See* ECF No. 127 at 213.)

28

also did not have any documented suicide attempts in STRH or otherwise when the chrono was authored or the IDTT occurred. Plaintiff's evidence thus does not establish that there was a heightened risk of suicide to Plaintiff from placement in STRH during the relevant time period. *See Stribling v. Brock,* 2017 WL 950803, at \*14 (N.D. Cal. Mar. 10, 2017) (finding there was no evidence of serious medical need where the plaintiff's medical records did not document any prior suicide attempts and plaintiff only reported suicidal thoughts, which the defendants treated). Again, Defendants have produced evidence that the STRH cells receive natural light from a skylight. (*See* ECF No. 99-17 at 4.) Further, it is not clear from the opposition what features of STRH, as opposed to prison cells generally, Plaintiff contends create a serious risk of harm to him. (*See id.*)

Even when viewed in the light most favorable to Plaintiff, the evidence in the record is insufficient for a reasonable jury to find that there was an objective substantial risk of serious harm to Plaintiff solely from placement in STRH. Thus, the Court recommends granting summary judgment in favor of the STRH Defendants on Plaintiff's Eighth Amendment claim regarding placement in STRH.

> b. *Subjective Deliberate Indifference*

The STRH Defendants also argue that Plaintiff cannot present any competent evidence showing they were subjectively deliberately indifferent to a substantial risk of serious harm. (ECF No. 99-2 at 23.) First, Dr. Kyle's September 8, 2016 assessment that Plaintiff did not have a mental health condition precluding him from placement in STRH was based on her clinical judgment. (*Id.*) The remaining STRH Defendants knew that no STRH placement was imminent at the time of the December 26, 2017 IDTT. (*Id.*) The STRH Defendants also did not have authority to make decisions regarding any future placement in STRH, as that decision would be based on a real-time assessment of Plaintiff's case factors. (*Id.*) There were also "robust suicide-prevention measures that were in place in STRH and available to [Plaintiff], if he was ever placed there" and, "if [Plaintiff] expressed suicidal ideations in STRH, he would be evaluated by mental-health staff for placement in a higher level of care." (*Id.*)

Plaintiff's opposition argues that Defendant Kyle failed to properly evaluate Plaintiff while he was placed in STRH on May 2, 2018, and subsequently falsified a report. (ECF No. 127

at 10-17.) Plaintiff also argues that Defendant Kyle authored the September 8, 2016 chrono because "mental health staff doesn't override custody" and not because of any clinical reason. (ECF No. 127 at 9.) Plaintiff asserts that he did inform the remaining STRH Defendants of his suicidal ideations when placed in STRH and they did nothing to address them. (*Id.* at 24-25.) Additionally, Plaintiff's particular mental health needs are at issue, not the mental health system in general at STRH. (*Id.* at 8.)

i.   Defendant Kyle

Defendant Kyle provides a declaration stating that she supervised mental health staff assigned to Plaintiff's housing unit, including Dr. Jordan, who was seeing Plaintiff at the time. (ECF No. 99-8 at 2.) When Dr. Jordan's September 6, 2016 chrono prohibiting Plaintiff from being housed in STRH pending further assessment was brought to Defendant Kyle's attention, she reviewed Plaintiff's mental health records indicating that Plaintiff may have secondary-gain reasons for reporting that he could not be housed in STRH. (*Id.* at 3.) Defendant Kyle also consulted with Dr. Jordan and other mental health staff. (*Id.*) Defendant Kyle determined Plaintiff was not presenting mental health symptoms that would prevent his placement in STRH and may have had "secondary-gain reasons motivating his report" that he could not be housed in STRH. (*Id.*) Defendant Kyle therefore authored the September 8, 2016 chrono documenting this decision. (*Id.*; *see also* ECF Nos. 99-2 at 23, 99-3 at 6, 99-17 at 18.)

Defendant Kyle's declaration further describes the suicide prevention measures in place in STRH, as well as her belief that if Plaintiff was suicidal or a danger to himself in STRH he would be elevated to a higher level of care such as MHCB. (ECF No. 99-8 at 3.) The STRH Defendants also submit Plaintiff's deposition testimony stating that Defendant Kyle evaluated Plaintiff for suicidal thoughts in connection with the September 8, 2016 chrono. (ECF No. 99-19 at 27.)

Defendant Kyle has satisfied her initial burden at summary judgment as to her subjective deliberate indifference in authoring the September 6, 2018 chrono.

In arguing that Defendant Kyle was subjectively deliberately indifferent to his risk of suicide, Plaintiff's opposition relies primarily on facts regarding a May 2, 2018 interaction with Defendant Kyle. (ECF No. 127 at 10-18.) Thus, the Court first considers whether the May 2, 2018 interaction with Defendant Kyle was sufficiently pled in the complaint such that it could support

1    Plaintiff's claim for deliberate indifference.

2         *May 2, 2018 Evaluation*

3         Defendants assert that any disputes of fact regarding Plaintiff's May 2, 2018 interaction

4    with Defendant Kyle cannot be used to defeat summary judgment on the deliberate indifference

5    claim because it was not pled in the operative complaint. (ECF No. 132 at 5-6, 12-13.) Instead,

6    Plaintiff's claim against Defendant Kyle for this claim was based on the allegation that she

7    authored a chrono in September 6, 2018, which permitted Plaintiff to be placed in STRH.

8    Defendants thus did not have sufficient notice under Federal Rule of Civil Procedure 8 of what

9    Plaintiff's claim was and the grounds upon which it rested. (*Id.* at 12-13.)

10        Plaintiff, in turn, contends that this case is distinguishable from other cases where courts

11   have found that the plaintiff improperly raised an unpled legal theory at summary judgment. (ECF

12   No. 127 at 21-22.) Specifically, Plaintiff argues that his allegations on summary judgment "are

13   not so different from those in [his] complaint," "Defendants were aware of these facts through

     discovery," and there is no undue surprise or prejudice to Defendants. (*Id.* at 22. )

14        Under Federal Rule of Civil Procedure 8(a)(2), a complaint must allege sufficient facts to

15   "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it

16   rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355

17   U.S. 41, 47 (1957) ). "[Where] the complaint does not include the necessary factual allegations to

18   state a claim, raising such claim in a summary judgment motion is insufficient to present the

19   claim to the district court." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir.

20   2008). Summary judgment is not a "procedural second chance to flesh out inadequate

21   proceedings." *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).

22   Accordingly, a party may not defeat a motion for summary judgment "by raising theories that lie

23   outside the scope of their pleadings." *Wormuth v. Lammersville Union Sch. Dist.*, 305 F. Supp. 3d

24   1108, 1119 (E.D. Cal. 2018).

25        Although the Court must construe pleadings liberally, "[p]ro se litigants must follow the

26   same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir.

27   1987), *overruled on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, 925 (9th Cir.

28   2012). Thus, "[t]he court's obligation to read the pleadings liberally in *pro se* cases extends to

                                        17

1   facts actually contained in the pleadings and does not grant a *pro se* plaintiff free rein to raise new

2   facts and theories in his opposition." *Smith v. Cruzen,* 2017 WL 4865565 at *3-4 (N.D. Cal. Oct.

3   26, 2017), *aff'd* 735 F.App'x. 434 (9th Cir. 2018).

4           In *Pickern v. Pier 1 Imports (U.S.), Inc.,* 457 F.3d 963 (9th Cir. 2006), the Ninth Circuit

5   provided the standard to be applied when new factual bases are raised at summary judgment.

6   *Pickern,* 457 F.3d at 968-69. There, the Court held that the district court properly rejected the new

7   factual bases raised at summary judgment as violating Rule 8 because the plaintiff had failed to

8   "'give the defendant fair notice of what the plaintiff's claim [was] and the grounds upon which it

9   rest[ed].'" *Id.* at 968 (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002)). In

10  affirming the district court's decision, the *Pickern* court focused on whether the complaint

11  provides the requisite notice under Rule 8. *See id.* at 968–69; *see also Oliver v. Ralphs Grocery*

12  *Co.,* 654 F.3d 903, 908–09 (9th Cir.2011) ("The issue underlying *Pickern* . . . is whether the

13  defendant had fair notice as required by Rule 8."). Instead, particularly in light of the Supreme

14  Court's subsequent decisions in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007),

15  and *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), a plaintiff must amend the complaint or

16  otherwise incorporate new allegations. *Pickern,* 457 F.3d at 969; *see also Navajo Nation v. U.S.*

17  *Forest Serv.,* 535 F.3d 1058, 1080 (9th Cir. 2008) ("[Where] the complaint does not include the

18  necessary factual allegations . . ., raising such a claim in a summary judgment motion is

19  insufficient to present the claim to the district court."); *Wasco Prods., Inc., v. Southwall Techs.,*

20  *Inc.,* 435 F.3d 989, 992 (9th Cir.2006) ("[S]ummary judgment is not a procedural second chance

    to flesh out inadequate pleadings.") (citation and internal quotation marks omitted).[4]

21          As explained in Court's screening order, Plaintiff's Eighth Amendment claim for

22  deliberate indifference based on Plaintiff's STRH placement is premised on the allegation that

23  Defendant Kyle authored a chrono in September of 2016 under false pretenses, overriding Dr.

24  Jordan's previous chrono prohibiting him from being housed in STRH. (ECF No. 10 at 10-11; *see*

25  *also* ECF No. 1 at 10-11 ("On 9/8/16, Kyle conspired with Gallagher and Childress to induce

26  _____

27  [4] Although *Pickern* concerned an Americans with Disabilities Act ("ADA") claim, courts have held that this principle applies equally outside the ADA context. *Pena,* 2014 WL 1330754, at *3–5 (citing *Adobe Lumber Inc.,* 2010 WL 760826, at *5; *Burrell v. Cnty. of Santa Clara,* 2013 WL 2156374, at *11 (N.D. Cal. May 17, 2013)).

28

Harris to commit suicide in STRH in light of decompensation there.. . . . Kyle overrode Jordan's chrono by authoring one of her own under false pretenses.").) Plaintiff alleges that he was placed in STRH in reliance on this chrono, causing Plaintiff to attempt suicide. (*Id.* at 10.) While the complaint describes Plaintiff's placement in STRH on May 2, 2018 and subsequent suicide attempt, it does not contain any description of or reference Defendant Kyle's May 2, 2018 evaluation or the subsequent allegedly falsified report as detailed in Plaintiff's opposition. Thus, the complaint does not provide Defendants with the requisite notice under Rule 8 that Plaintiff's claim encompasses this May 2, 2018 interaction with Defendant Kyle.

Additionally, as Defendants also note, Plaintiff previously attempted to amend his complaint to include these same facts related to Plaintiff's May 2, 2018 interaction with Defendant Kyle, her failure to properly evaluate him, and her subsequent falsification of an evaluation report. (*See* ECF Nos. 49-50, 59, 70.)[5] Plaintiff's request for leave to amend was denied because Plaintiff failed to explain why he did not amend his complaint when given an opportunity to do so, and because amendment would prejudice Defendants. (ECF Nos. 59, 70.) Plaintiff's opposition to the motion for summary judgment, filed more than a year after the motion for leave to amend was denied and more than two years after Plaintiff agreed to proceed on the claims found cognizable in the screening order, still does not address these issues, or provide any basis for altering the Court's reasoning at this stage of the proceedings.[6]

Plaintiff cites to *Coleman v. Quaker Oats Co.,* 232 F.3d 1271 (9th Cir. 2000) and *Morgan v. Brown,* 2018 WL 4385842 (E.D. Cal. Sept. 14, 2018) in support of his argument that evidence regarding the May 2, 2018 interaction with Defendant Kyle should be considered at summary judgment. (ECF No. 127 at 22.) In *Coleman*, the plaintiffs brought an employment discrimination claim and the operative complaint only alleged a disparate treatment theory, and not a disparate impact theory. *Coleman,* 232 F.3d at 1291-92. The plaintiffs attempted to raise a disparate impact

---

[5] Plaintiff's motion for leave to amend acknowledged that his complaint did not plead a claim related to these new facts. (ECF No. 49 at 2 ("This event is already described in my complaint as part of the factual nucleus of my other claims. However, they did not reflect the specificity necessary to state an independent claim.").)

[6] Plaintiff's opposition concludes that "there is no indication that defendants have been subject to undue surprise or prejudice." (*see* ECF No. 127 at 22.) As District Judge Drozd explained in his order adopting the Court's findings and recommendations to deny leave to amend, Plaintiffs' undue delay in raising these allegations "would result in significant prejudice to the current defendants" and "[t]his well founded conclusion belies plaintiff's objection that defendants will not suffer prejudice were he to be granted leave to amend at this stage of the proceedings." (ECF No. 20 at 2.)

theory at summary judgment, and the Ninth Circuit rejected this attempt, focusing on the prejudice to the defendant. *Id.* at 1292–93 (internal citation omitted). The *Coleman* court concluded by holding that "the plaintiffs, who clearly stated . . . claims of disparate treatment but sought also to pursue claims of disparate impact, were required either (1) to plead the additional disparate impact theory in their complaints, or (2) to make known during discovery their intention to pursue recovery on the disparate impact theory omitted from their complaints." *Id.* at 1294.

Unlike *Coleman,* Plaintiff here does not assert a new theory of liability and instead raises new factual bases and instead argues the same theory on the basis of a different set of facts, as in *Pickern*. Thus, the proper inquiry as stated in *Pickern* is the notice provided under Rule 8 rather than the prejudice to Defendants. As explained above, the complaint does not provide notice to Defendants that Plaintiff's Eighth Amendment claim encompassed the May 2, 2018 interaction with Defendant Kyle.

The Court also does not find *Morgan* to be persuasive.[7] In *Morgan,* the plaintiff brought claims under 42 U.S.C. § 1983 for injuries sustained due to the defendants' deliberate indifference to the plaintiff's safety in violation of the Eighth And Fourteenth Amendments after the plaintiff was battered by another inmate. *Morgan,* 2018 WL 4385842, at *1. The operative complaint alleged that the other inmate gained access to a protected custody yard where plaintiff was housed after one of the defendant staff members left a gate open and unguarded. *Id.* at *3. At summary judgment, the plaintiff argued that the defendant was deliberately indifferent by failing to ensure an escort officer was present before releasing inmates for pill call. *Id.* In rejecting the defendants' argument that the latter actions constituted a new and separate claim that could not be raised for the first time at summary judgment, the court noted that the allegations at summary judgment "[o]n the balance . . . are not so different from those in the FAC as to lie outside the scope of the pleadings." *Id.* at *4. The plaintiff was advancing the same legal theory of liability, the new allegations did not subject the defendant to reworking his defense, and, liberally construed, the allegations were similar to those alleged in the complaint. *Id.*

Unlike *Morgan,* Plaintiff's theory as stated in his opposition, *i.e.* that Defendant Kyle did

---

[7] This Court is not bound by district court opinions. *See Starbuck v. City and Cnty. of San Francisco,* 556 450, 457 n. 13 (9th Cir. 1977). Further, *Morgan* is distinguishable from this case for the reasons explained below.

not adequately evaluate him on May 2, 2018, is entirely different from the factual basis for his claim alleged in the complaint, *i.e.* that Defendant Kyle improperly wrote a chrono in 2016 that overrode his prior chrono prohibiting him from being housed at STRH. Plaintiff's argument that Defendants were made aware of these facts through discovery is also unavailing, as notice effected under discovery alone is typically insufficient to satisfy Rule 8. *Pena v. Taylor Farms Pac., Inc.*, 2014 WL 1330754, at *5 (E.D. Cal. Mar. 28, 2014) ("Further, in most instances, notice may not be effected through discovery alone because such notice will usually fail to satisfy Rule 8.") (citing *Pickern*, 457 F.3d at 968–69)*; see also Adobe Lumber Inc. v. Hellman,* 2010 WL 760826, at *5 (E.D. Cal. Mar. 4, 2010) ("A plaintiff may not make vague and generic allegations in [the] complaint and simply add facts as discovery goes along without amending the complaint because to do so 'would read the "fair notice" requirement out of Rule 8(a) and ... undermine the rule's goal of encouraging expeditious resolution of disputes.'") (quoting *Pickern v. Pier 1 Imports,* 339 F.Supp.2d 1081, 1088 (E.D. Cal. 2004)).

Plaintiff failed to provide sufficient notice to Defendants under Rule 8 that his Eighth Amendment claim encompassed the May 2, 2018 interaction between Defendant Kyle and Plaintiff or Defendant Kyle's improper evaluation and falsified report. The Court accordingly finds that Plaintiff's arguments based on new factual theories are improperly raised on summary judgment and do not create a dispute of fact regarding Plaintiff's claim against Defendant Kyle for deliberate indifference to serious medical needs.

*September 6, 2018 Chrono*

With respect to Defendant Kyle's September 6, 2018 chrono, which was the underlying fact in the operative complaint, Plaintiff's opposition to summary judgment, which is signed under penalty of perjury, states that Defendant Kyle told him she overrode Dr. Jordan's chrono "because mental health staff doesn't override custody." (ECF No. 127 at 9.) Plaintiff declares that Defendant Kyle then told custody guards to place Plaintiff in STRH and not to remove him unless he hurt himself because Plaintiff "just wanted to be in control." (*Id.*) The guards ignored Defendant Kyle's directive, placed Plaintiff in a holding cell, and had Plaintiff reevaluated by another clinician after Defendant Kyle's shift was over, resulting in Plaintiff being admitted to suicide watch. (*Id.*) Plaintiff's level of care was subsequently reduced. (*Id.* at 10.) Plaintiff was

later admitted to suicide watch on several occasions in early 2018, and Plaintiff attempted suicide on May 2, 2018 while in STRH. (*Id.* at 16-18.)

As noted above, Defendant Kyle has satisfied her initial burden at summary judgment as to her subjective deliberate indifference. It is undisputed that, in connection with the September 6, 2018 chrono, Defendant Kyle evaluated Plaintiff and asked him about his symptoms, consulted with other mental health staff, and reviewed Plaintiff's medical records. (ECF Nos. 99-8 at 2-3, 99-19 at 27.) Defendant Kyle determined that Plaintiff was not suffering from a mental health condition that would preclude him from being placed in STRH at that time, and therefore cleared Dr. Jordan's prior prohibition on housing Plaintiff in STRH, consistent with Dr. Jordan's statement that the STRH prohibition was in place pending further assessment. (ECF No. 99-8 at 3.) The chrono accordingly states that Plaintiff was not presenting mental health symptoms preventing him from being housed in STRH "at [that] time" and that Plaintiff knew "how to seek mental health assistance should he require it while housed in STRH." (ECF No. 99-17 at 18.) *See Farmer,* 511 U.S. at 844 (reasoning that prison officials are not deliberately indifferent "if they responded reasonably to the risk, even if the harm ultimately was not averted"); *Rice v. Fielder,* 2022 WL 624995, at *4 (E.D. Cal. Mar. 3, 2022) (finding no deliberate indifference where the defendant "conducted two suicide evaluations of Plaintiff" and, during those evaluations, "reviewed Plaintiff's medical history, recent evaluations, discussed Plaintiff with custody staff, and in his professional opinion determined that Plaintiff was not suicidal").

Plaintiff, in turn, has not presented any evidence showing Defendant Kyle was aware of any heightened risk of suicide based on placement in STRH and, in the face of that knowledge, disregarded the risk. There is no indication Defendant Kyle "witnessed suicidal actions, heard statements of a suicidal nature, or witnessed [any other] signs of [plaintiff's] suicidal intent that would lead to awareness of his actively or imminently suicidal state" during her evaluation of Plaintiff. *Bremer v. County of Contra Costa,* 2016 WL 6822011, at *7 (N.D. Cal. Nov. 18, 2016). The evidence before the Court does not establish that Defendant Kyle was aware Plaintiff's suicide risk was so high that she needed to take immediate action to prevent it. Indeed, Plaintiff acknowledges that there were other treatment measures available to him if he experienced suicidal thoughts, including admission to MHCB, which Plaintiff utilized. While Plaintiff

contends that a chrono or other measure prohibiting him from being housed in STRH was appropriate, Plaintiff's difference of opinion regarding the preferred course of treatment does not constitute an Eighth Amendment violation. *Toguchi v. Chung,* 391 F.3d 1051, 1059-60 (9th Cir. 2004) ("[A] difference of medical opinion . . . cannot support a claim of deliberate indifference.").

Plaintiff's evidence of Defendant Kyle's statements, including that she told him "mental health staff doesn't override custody" and directed prison staff not to remove Plaintiff from STRH unless he hurt himself because he "just wanted to be in control," does not establish that Defendant Kyle was deliberately indifferent to a heightened risk of suicide. To the contrary, this evidence acknowledges that Defendant Kyle did not believe Plaintiff was actually suicidal, but instead thought Plaintiff was trying to manipulate his housing assignment. *See Gordy v. Agamyan*, 2020 WL 9264840, at \*10 (C.D. Cal. Aug. 31, 2020), *report and recommendation adopted*, 2021 WL 1577824 (C.D. Cal. Apr. 21, 2021) (recommended summary judgment be granted as to defendant's subjective deliberate indifference where defendant did not believe plaintiff was actually suicidal and instead thought he was trying to avoid transfer to a different prison). Plaintiff's evidence regarding Defendant Kyle's state of mind "is fatal to [plaintiff's] deliberate-indifference claim because [the defendant] could not have consciously disregarded an excessive risk that he was suicidal if she genuinely didn't believe he was." *Id.*; *see also Toguchi v. Chung,* 391 F.3d 1051, 1057 (9th Cir. 2004) ("If a [prison official] should have been aware of the risk but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk.") (quoting *Gibson v. County of Washoe, Nevada,* 290 F.3d 1175, 1188 (9th Cir. 2002); *Farmer,* 511 U.S. at 935 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment under [the Eighth Amendment].").

Viewing the evidence in the light most favorable to Plaintiff, no reasonable jury could find that Defendant Kyle was subjectively deliberately indifferent to Plaintiff's risk of suicide when she authored the September 8, 2016 chrono. Thus, the Court recommends granting summary judgment in favor of Defendant Kyle on this basis.

\\\

ii.   Defendants Grossman, Thompson, Depovic, and Moreno

Defendants Grossman, Thompson, Depovic, and Moreno provide declarations stating that they were members of the December 26, 2017 IDTT, they do not recall Plaintiff reporting suicidal thoughts when being housed in STRH during the meeting, and they instead recall Plaintiff complaining that he did not want to be in the IEX Program. (ECF Nos. 99-5 at 1-2, 99-7 at 1-2, 99-10 at 99-12 at 2-3, 3-4.) Defendants Grossman, Thompson, Depovic, and Moreno also declare that Plaintiff was not housed in STRH at that time of the IDTT, and whether he would be in the future was "outside the purview of the IDTT." (ECF Nos. 99-5 at 2, 99-7 at 2, 99-10 at 4, 99-12 at 3.)

According to the STRH Defendants' declarations, during the December 26, 2017 IDTT, Plaintiff was counseled on how to identify, evaluate, and modify problematic thoughts and maladaptive core beliefs, as well as relaxation techniques to reduce his overall anxiety. (ECF Nos. 99-5 at 2, 99-7 at 2.) Defendant Depovic also met separately with Plaintiff and discussed his medication regimen with him, counseled him to inform staff if he had serious thoughts of hurting himself, prescribed him anxiety medications buspirone and Vistaril, and noted the plan for Plaintiff to continue following up with his mental health care manager or psychologist. (ECF No. 99-5 at 2.) The STRH Defendants submit copies of Defendant Depovic and Defendant Grossman's notes from this meeting and the IDTT confirming these discussions. (ECF No. 99-18 at 85-91, 93-95.)

Defendants Grossman, Thompson, Depovic, and Moreno further declare that any determination regarding Plaintiff's housing placement, including STRH, would be made at a future date based on an assessment of Plaintiff's case factors at that time. (ECF No. 99-5 at 2-3, 99-7 at 2, 99-10 at 4, 99-12 at 3.) Thus, even if Plaintiff reported becoming suicidal in STRH and this was documented by the IDTT, it would not have precluded him from being housed in STRH at some time in the future. (*Id.* at 3.) These defendants also all state that they would not recommend Plaintiff be excluded from some future but unknown STRH placement, as that decision would be within the authority of custody officials based on a real-time assessment of Plaintiff's case factors. (*Id.*) The STRH Defendants also describe the suicide-prevention measures available in STRH at the time of the December 26, 2017 IDTT. (ECF Nos. 99-5 at 3, 99-7 at 2-3,

1    99-10 at 4, 99-12 at 4.)

2          Plaintiff's opposition, signed under penalty of perjury, states that he did in fact notify the

3    December 26, 2017 IDTT members of his active suicidal ideations in STRH, Dr. Jordan's

4    September 6, 2018 chrono, and his likelihood of ending up in STRH because he "refused to

5    jeopardize [his] future safety by programming peacefully with protective custody inmates." (ECF

6    No. 127 at 23.) Defendant Thompson made vague references to Defendant Kyle's September 8,

7    2016 chrono. (*Id.*) Plaintiff did not know this chrono existed yet and requested a copy, but did not

8    receive one. (*Id.* at 23-24.) The IDTT members did nothing to address the matter. (*Id*. at 24-25.)

9    Plaintiff contends that the IDTT members were required to make a clinical judgment regarding

10   his placement in STRH, and if that judgment was to exclude him from placement there then

11   custody would have to honor it or they would be the ones violating Plaintiff's constitutional

12   rights. (*Id.* at 25.) Further, in response to Plaintiff's administrative appeal, Defendants

13   acknowledged their obligation to document mental health factors related to housing assignments

     and make recommendations but did neither. (*Id.* at 26-27.)

14         The Court finds that Plaintiff has submitted sufficient evidence from which a reasonable

15   jury could find that he informed the December 26, 2017 IDTT members that he became suicidal

16   when housed in STRH. However, even if Plaintiff did inform the IDTT members that he became

17   suicidal in STRH, Plaintiff has failed to show that these defendants' response was unreasonable in

18   light of all of the circumstances. During the December 26, 2017, Plaintiff received counseling on

19   addressing problematic thoughts and maladaptive core beliefs and relaxation techniques to reduce

20   anxiety. Defendant Depovic, a psychiatrist, met separately with Plaintiff, discussed his

21   medications, and counseled Plaintiff to notify staff of thoughts of self-harm. These actions are

22   documented in the notes from the IDTT and from Defendant Depovic's meeting with Plaintiff.

23   Additionally, the IDTT notes reflect that recommendations regarding Plaintiff's placement were

24   based on the medical records and evaluations of Plaintiff that were available to the IDTT, as well

25   as Plaintiff's comments at the meeting. (*See* ECF No. 99-18 at 85-91.)

26         While Plaintiff concludes that the IDTT did "nothing," he does not dispute that he

27   received counseling for his anxiety during the IDTT and counseling regarding suicidal thoughts

28   during his meeting with Defendant Depovic. (*See* ECF No. 127 at 24.) Instead, Plaintiff argues

that the IDTT members were deliberately indifferent because they did not "document a course of action to address this issue in [his] IDTT notes." (*Id.* at 24.) Stated differently, Plaintiff believes Defendants Grossman, Thompson, Depovic, and Moreno were deliberately indifferent because they did not write a recommendation in the IDTT notes that Plaintiff should be precluded from being placed in STRH. (*Id.* at 24-25.) However, this is not the standard for deliberate indifference—the issue is whether the IDTT members' failure to document Plaintiff's reports of becoming suicidal in STRH was medically unacceptable under the circumstances or whether they chose this course of action in conscious disregard of an excessive risk to Plaintiff's health. *Toguchi,* 391 F.3d at 1058.

Here, Plaintiff has not submitted any evidence to support his conclusion that the IDTT members were deliberately indifferent to his risk of suicide. *Taylor,* 880 F. at 1045 (9th Cir. 1989) ("[A] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.")  Plaintiff does not identify any facts or evidence supporting his conclusion that the IDTT members failed to exercise their clinical judgment in making recommendations regarding his placement. Plaintiff also does not contend that he was suffering from suicidal ideations at the time of the December 26, 2017 IDTT, or that he was in imminent danger of being placed in STRH. It is undisputed that decisions regarding Plaintiff's placement are made based on an assessment of the factors that existed at that time and not solely based on the prior IDTT recommendations. Under these circumstances, no reasonable trier of fact could find a mental state more culpable than negligence. *Rodriguez v. Tilton,* 2013 WL 1402731, at *12 (E.D. Cal. Apr. 5 2013) ("Neither negligence, recklessness, nor medical malpractice rises to the level of deliberate indifference.") (citing *Farmer,* 411 U.S. at 835-37; *Estelle,* 429 U.S. at 104). While Plaintiff may not agree with the IDTT members' actions, an inmate's disagreement with staff members' decisions does not constitute deliberate indifference. *See Toguchi,* 391 F.3d at 1058-60.

Plaintiff has failed to meet his burden of raising a genuine issue of fact to support his claim that the IDTT members' inaction rose to the level of subjective deliberate indifference to Plaintiff's serious medical needs. Accordingly, the Court recommends that Defendants Grossman, Thompson, Depovic, and Moreno be granted summary judgment on Plaintiff's Eighth

1 | Amendment claim related to his placement in STRH.[8]

2 |       3.      Placement in the IEX Program

3 |      Plaintiff's second claim for violation of his Eighth Amendment rights relates to his

4 | placement in the IEX Program, which mixed protective custody inmates with non-protective

5 | custody inmates. (*See* ECF No. 10 at 11-13.) Plaintiff alleges that he told the IEX Defendants that

6 | he could not program peacefully with protective custody inmates in the IEX Program, and then

7 | had he had numerous altercations with protective custody inmates while in the IEX Program. (*Id.*

8 | at 11-12.) In other words, Plaintiff told IEX defendants that Plaintiff would intentionally hurt

9 | protective custody inmates if he was put in the IEX program because he thought in general

10 | population might harm him later if he did not. Plaintiff alleges that Defendants Kyle, Overly,

11 | Wright, Moreno, Gamez, and Castillo assigned Plaintiff to the IEX Program "in order to stage

12 | fights with him and protective custody inmates" after Plaintiff reported that he would harm

13 | protective custody inmates if placed in a non-segregated environment with them. (*Id.* at 12.) A

14 | psychologist notified Defendant Thompson of the risk to Plaintiff if he was placed in the IEX

  | Program and Defendant Thompson did not act to prevent any risk. (*Id.* at 13.)

15 |      The IEX Defendants move for summary judgment on five grounds: 1) there was not a

16 | substantial risk of serious harm to Plaintiff in the IEX Program because Plaintiff never identified

17 | a particular inmate who was his enemy; 2) the IEX Defendants subjectively did not perceive any

18 | risk to Plaintiff from any other inmates in the IEX Program; 3) the IEX Defendants were not the

19 | cause of the alleged harm; 4) the IEX Defendants are entitled to qualified immunity; and 5)

20 | Plaintiff failed to administratively exhaust his claims against Defendants Overly, Moreno,

21 | Castillo, Gomez, and Wright. (ECF No. 99-1 at 25-31.)

22 |      For the following reasons, the Court recommends that the IEX Defendants be granted

23 | summary judgment on Plaintiff's Eighth Amendment claim arising out of his placement in the

24 | IEX Program.

25 |       a.  *Objective and Subjective Deliberate Indifference*

26 |      The IEX Defendants first argue that there was not an objectively substantial risk of harm

27 |  

28 | 

---

[8] However, having found that the STRH Defendants are entitled to summary judgment on these bases, the Court declines to address the STRH Defendants' remaining arguments, including that the STRH Defendants were not the cause of Plaintiff's harm and are entitled to qualified immunity. (*See* 99-2 at 24-25, 30.)

to Plaintiff because Plaintiff never identified any particular inmate who was his enemy or who he could not program with in the IEX Program. (ECF No. 99-2 at 26.) Instead, Plaintiff made general claims that he would not program peacefully with protective custody inmates. (*Id.*) Likewise, the information relayed to Defendant Thompson only made general allegations regarding not programming with protective custody inmates. (*Id.*)

The IEX Defendants also argue that they were not subjectively deliberately indifferent because they did not perceive any risk to Plaintiff from any other inmates in the IEX Program. (ECF No. 99-2 at 26.) Further, the IEX Defendants took reasonable steps to address any risk by confirming Plaintiff did not have any documented enemies in the IEX Program, and believed the program would be beneficial to Plaintiff. (*Id.* at 27.)

Plaintiff's opposition does not specifically address these arguments. (*See* ECF No. 127.) However, Plaintiff disputes whether he was qualified for the IEX Program as well as the purposes for the program and the prison's enemy classification policies. (ECF No. 127 at 28-29.)

It is undisputed that, on December 19, 2017, an ICC convened to consider Plaintiff's housing placement and Plaintiff told the IEX Defendants who were ICC members[9] that he was not going to program peacefully with protective custody inmates. (ECF Nos. 99-3 at 14, 127 at 30.) Plaintiff's opposition, signed under penalty of perjury, also states that he informed the ICC committee that if he programmed with protective custody inmates, he would be subject to attack by other non-protective custody inmates. (ECF No. 127 at 28.) It is undisputed that Plaintiff did not identify a threat from a particular inmate at the December 19, 2017 ICC meeting. (*See* ECF Nos. 99-3 at 13-14, 127 at 28-31.) It is also undisputed that Plaintiff has never been to a general population yard or been threatened by a general population inmate for programming peacefully for protective custody inmates. (ECF Nos. 99-3 at 14, 77.) The IEX Defendants each provide declarations stating that they believed Plaintiff would benefit from the program because of the number of IEX RVRs he had received. (ECF Nos. 99-4 at 4, 99-6 at 2, 99-10 at 2-3, 99-11 at 2-3, 99-14 at 2.) After placement in the IEX Program, Plaintiff was involved in two physical

---

[9] The only IEX Defendant who was not an ICC member is Defendant Thompson. It is undisputed that Defendant Thompson was informed by email on December 19, 2017 that Plaintiff threatened he would be "forced to kill" protective custody inmates or have his "own life in jeopardy" if placed in the IEX Program. (ECF No. 99-3 at 15-16; *see also* ECF No. 127.)

confrontations with protective custody inmates, one of which was broken up by prison staff with pepper spray. (ECF Nos. 99-3 at 17, 127 at 30-31.)

Here, Plaintiff does not allege that there was any risk to his safety in the IEX Program itself, and instead contends that he would have been subject to attack if placed in general population *after* being placed in the IEX Program and programming peacefully with protective custody inmates. Thus, the risk to Plaintiff identified, if any, was from placement in general population and not from placement in the IEX Program. However, it is undisputed that Plaintiff has never been housed on a general population yard and, according to Plaintiff's deposition testimony, he has "an extensive SHU term to like 2040 something." (ECF No. 99-19 at 77; *see also* ECF No. 127 at 149 (noting that Plaintiff is "serving an 18-month aggravated/consecutive approved SHU term with a controlling MERD of 5/19/40 for RVR dated 7/23/13 for Battery on a Peace Officer.").)

Plaintiff did not submit any evidence of a dangerous environment in the IEX Program itself or specific threats issued against him as a result of being placed in the IEX Program. *See Edwards v. Arutyunyan,* 2016 WL 11742742, at *4 (C.D. Cal. June 27, 2016) (finding there was no triable fact regarding existence of an objective risk in a failure to protect claim where plaintiff did not submit evidence of a dangerous environment or specific threats against him); *Quiroga v. King,* 2016 WL 2609805, at *5 (dismissing failure to protect deliberate indifference claim where the plaintiff alleged that he was "in danger with other inmates" but did not provide any description of the nature of the danger he faced); *Garces v. Degadeo,* 2010 WL 796831, at *4 (E.D. Cal. Mar. 5, 2010) (finding that "vague safety concerns" were insufficient to preclude summary judgment on an Eighth Amendment failure to protect claim). In these circumstances, construing the evidence in the light most favorable to Plaintiff, the record does not contain sufficient evidence from which a reasonable trier of fact could conclude that the IEX Defendants were objectively deliberately indifferent.

Likewise, Plaintiff has failed to establish a dispute of fact regarding whether the IEX Defendants were subjectively deliberately indifferent. As noted above, it is undisputed that Plaintiff did not identify any specific threat to his safety in the IEX Program and only stated that he would harm protective custody inmates generally if forced to program with them. "A

29

defendant's awareness of a possibility of attack does not constitute deliberate indifference." *Mitchell v. Snowden,* 2009 WL 1684595, at *5 (E.D. Cal. June 16, 2009) (citation omitted). Additionally, the undisputed evidence shows that the ICC members discussed potential safety concerns with Plaintiff at the ICC meeting and confirmed that Plaintiff had no documented enemies both at the ICC itself and afterward.

Plaintiff also contends that he was placed in the IEX Program because the IEX Defendants wanted to "stage fights" between Plaintiff and protective custody inmates, Plaintiff was not qualified for the IEX Program, and the program was intended to address the "increasingly violent nature" of protective custody inmates. (ECF No. 127 at 28, 32-33.) Plaintiff does not identify any facts or evidence supporting his conclusory statements or creating an inference that these circumstances occurred. *Leer v. Murphy,* 844 F.2d 628, 633 ("Sweeping conclusory allegations will not suffice to prevent summary judgment.").

In light of the foregoing, construing the evidence in the light most favorable to Plaintiff, the Court finds that the IEX Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim related to his placement in the IEX Program.[10]

    b.  *Qualified Immunity*

The IEX Defendants argue that they are entitled to qualified immunity on Plaintiff's Eighth Amendment claim. (ECF No. 99-2 at 29-30.) Specifically, "there was no caselaw clearly establishing that they could be constitutionally liable for failing to protect an inmate based on the inmate's threat to attack *other* inmates in a prison program, even though none of those other inmates posed a threat of harm to him." (*Id.* at 30.)

Plaintiff argues that the IEX Defendants are not entitled to qualified immunity because "[t]he aforementioned cases made Defendants actions clear to them as unlawful years before violating my constitutional rights." (ECF No. 127 at 36.)

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231

---

[10] The Court will address the IEX Defendants' arguments regarding qualified immunity as discussed further below. However, having found that summary judgment is warranted on these bases, the Court declines to address the IEX Defendants' arguments regarding causation and administrative exhaustion.

(2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567, (2004) (Kennedy, J., dissenting)).

In determining whether an officer is entitled to qualified immunity, the Court must decide (1) whether facts alleged or shown by plaintiff make out a violation of constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. *Pearson,* 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Court has discretion to decide which prong of qualified immunity to address first in light of the circumstances of the case and, if analysis of one prong provides dispositive, the court need not analyze the other. *See id.*

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent," as shown in "controlling authority or a robust consensus of cases of persuasive authority." *Dist. of Columbia v. Wesby,* 138 S. Ct. 577, 589-90 (2018). The clearly established inquiry "serves the aim of refining the legal standard and is solely a question of law for the judge." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). The Supreme Court has noted that the law "does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White*, 137 S. Ct. at 551 (quotations and citations omitted). When determining whether the right at issue has been clearly established, the court may not "define clearly established law at a high level of generality." *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 742 (2011)). Rather, "the clearly established law at issue must be particularized to the facts of the case." *White*, 137 S. Ct. at 552. The plaintiff bears the burden of "proving that the right allegedly violated was clearly established at the time of the official's allegedly impermissible conduct." *Camarillo v. McCarthy,* 998 F.2d 638, 639 (9th Cir. 1993).

With this framework in mind, the Court notes that, for the reasons discussed above, the facts shown by Plaintiff regarding his placement in the IEX Program do not make out a violation of his Eighth Amendment rights. However, the Court exercises its discretion to analyze the second prong, *i.e.* whether the IEX Defendants' conduct violated a clearly established right. Here, Plaintiff's theory is that the IEX Defendants had an obligation to prevent him from harming other inmates based on his belief that he could be harmed in general population if he programmed peacefully with protective custody inmates. However, Plaintiff has not met his burden of proving that this was clearly established at the time he was placed in the IEX Program.

Plaintiff's opposition refers generally to the "aforementioned cases" in arguing that the IEX Defendants are not entitled to qualified immunity but does not identify any particular cases he contends clearly established a right for an inmate to be protected from harming other inmates based on a belief that he would be harmed in the future if he failed to do so. (*See* ECF No. 127 at 36.) The only case Plaintiff cites in his opposition regarding his claim against the IEX Defendants is *Williams v. Williams,* 2012 WL 1094351 at *5 (N.D. Cal. March 29, 2012). In *Williams,* the plaintiff was a member of a white supremacy gang and sustained injuries after attacking another inmate who was a member of a black gang. *Williams,* 2012 WL 1094351, at *5. The district court reasoned that, while the plaintiff's conduct was an intervening cause of his injuries, "[g]enuine issues of material fact exist as to whether Plaintiff's conduct was a foreseeable and normal result of Defendant having let [Plaintiff and the other inmate] our of their cells at the same time." *Id* at *6. The *Williams* court found that the plaintiff could either see if the other inmate would attack him or he could mitigate any attack by attacking first. *Id.* Summary judgment was inappropriate because a jury could conclude the plaintiff's choice to attack first was a "foreseeable and normal response" to the defendant's decision to put inmates from fighting gangs together. *Id.*

*Williams* is not binding on this Court and is also distinguishable from the facts of this case. Here, there is no evidence that the protective custody inmates Plaintiff attacked were a threat to him. Unlike the plaintiff in *Williams,* Plaintiff was not forced to choose between attacking first or waiting to see if these inmates would attack him. There is no evidence of any threat to Plaintiff from the inmates he attacked. Instead, as discussed above, Plaintiff chose to harm protective custody inmates based his belief that someone in general population might harm

him if they learned he had programmed peacefully with the protective custody inmates.

*Williams* does not show that officers must change an inmate's housing or otherwise protect an inmate based on the inmate's stated intention to harm other inmates if put in a housing situation.  It does not "place the constitutional question beyond debate" or demonstrate either controlling authority or a "robust consensus" of persuasive cases on this topic. *See White*, 137 S. Ct. at 551; *Dist. of. Columbia,* 138 S. Ct. at 589-90. Again, there is no allegation that Plaintiff believed he would be harmed by protective custody inmates.  He had no enemies in that yard. Instead, he believed he would choose to assault protective custody inmates based on his belief that he could come to harm at some later time if he failed to do so.  The Court does not find that Defendants' placement of Plaintiff in the protective housing yard under these circumstances violated a clearly established right.

Given this, as well as the substantial differences between the circumstances in *Williams* and in this case, the Court does not agree that *Williams* would put the IEX Defendants on notice that their conduct was unlawful. Drawing all inferences in the manner most favorable to Plaintiff, the Court finds that the IEX Defendants are entitled to qualified immunity and therefore recommends granting summary judgment on that basis.

### B.     First Amendment Claim

Plaintiff's third claim is for retaliation in violation of the First Amendment. (*See* ECF No. 10 at 14-15.) Plaintiff alleges that he did not qualify to be placed into the IEX Program and the Retaliation Defendants placed him there to punish him for grievances and lawsuits. (*Id.* at 15.)

For the following reasons, the Court recommends granting summary judgment on Plaintiff's First Amendment claim in favor of the Retaliation Defendants.

### A.     First Amendment Legal Standards

It is well-established that prisoners have a First Amendment right to file prison grievances and that retaliation against prisoners for their exercise of this right is a constitutional violation. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action

1   did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559,

2   567–68 (9th Cir. 2005) (footnote and citations omitted). To prevail on a retaliation claim, a

3   plaintiff may "assert an injury no more tangible than a chilling effect on First Amendment rights."

4   *Brodheim*, 584 F.3d at 1269–70. Furthermore, "a plaintiff does not have to show that 'his speech

5   was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or

6   silence a person of ordinary firmness from future First Amendment activities.'" *Id.*at 1271 (citing

7   *Rhodes*, 408 F.3d at 568–69).

8       Circumstantial evidence, such as the timing of an alleged retaliatory act, can be considered

9   as evidence to support a retaliation claim. *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003)

10  (finding genuine issue of material fact on retaliation claim based, in part, on plaintiff "offer[ing]

11  the suspect timing of [a gang validation investigation] coming soon after his success in [] prison

12  conditions grievances" and that evidence used to validate him as a gang member had "previously

13  [been] determined to be insufficient" to conclude that he was a gang member). Nevertheless, First

14  Amendment retaliation is not established simply by showing adverse activity by a defendant after

15  protected speech; rather, the plaintiff must show a nexus between the two. *See Huskey v. City of*

16  *San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the "logical fallacy

17  of *post hoc*, *ergo propter hoc*, literally, "after this, therefore because of this."). The plaintiff must

18  allege specific facts demonstrating that the plaintiff's protected conduct was "the 'substantial' or

19  'motivating' factor behind the defendant's conduct." *Brodheim*, 584 F.3d at 1271 (quoting

20  *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir.1989)).

21      B.    Analysis

22      The Retaliation Defendants argue that Plaintiff cannot show they retaliated against him by

23  placing him in the IEX Program. (ECF No. 99-2.) The timing of Plaintiff's placement in the IEX

24  Program was not unusually suggestive of bad motive because the IEX Program had just opened

25  and Plaintiff had approximately sixty IEX offenses. (*Id.* at 28.) Plaintiff also acknowledged at his

26  deposition that he may have been placed in the IEX Program even if he had no litigation history.

27  (ECF Nos. 99-2 at 28.)

28

Plaintiff's opposition does not address his First Amendment claim.[11] However, in connection with his Eighth Amendment failure to protect claim, Plaintiff argues that he was not qualified for the IEX Program and the IEX Program was instead "reserved for prisoners serving a segregation terms [sic] solely for I.E.X." (ECF No. 127 at 32.) The document Plaintiff cites in support of this statement contradicts Plaintiff's conclusion, and explains that the IEX Program is intended for "inmates found guilty of IEX or two or more Sexual Disorderly Conduct offenses in a 12-month period." (*See id.*; ECF No. 99-18 at 109.) Plaintiff contends that he was serving a SHU term for assault and cites to a Classification Committee Chrono dated November 9, 2017. (ECF No. 127 at 32.) This document again contradicts Plaintiff's statements, as it acknowledges Plaintiff is serving a SHU term for assault on a peace officer but also notes that Plaintiff "has received numerous RVR's for Indecent Exposure; however, these SHU terms have ran concurrent. Currently, [Plaintiff] has 3 pending RVR's for Indecent Exposure." (ECF No. 127 at 149.) Thus, the evidence Plaintiff relies on contradicts his conclusion that he was not qualified for the IEX Program.

Plaintiff otherwise failed to oppose or respond in any way to the Retaliation Defendants' motion for summary judgment on Plaintiff's First Amendment Claim. Thus, the Court finds that the Retaliation Defendants have carried their initial burden at summary judgment and Plaintiff has failed to submit any evidence from which a reasonable jury could conclude that the Retaliation Defendants retaliated against Plaintiff by placing him in the IEX Program for filing grievances and lawsuits. Therefore, the Court will recommend that the Retaliation Defendants' motion for summary judgment be granted.

## V.   CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.   Defendants' motion for summary judgment (ECF No. 99) be GRANTED;

2.   Judgment be entered in favor of Defendants; and

---

[11] Notably, the Court issued an order on June 14, 2021, directing Plaintiff to file an opposition to Defendants' motion for summary judgment and providing him additional time to do so after he failed to timely file his opposition. (ECF No. 102.) The Court's order explained that, if Plaintiff failed to respond to the motion, the Court may treat the facts asserted by Defendants as undisputed for purposes of the motion. (*Id.*) Additionally, Plaintiff was subsequently granted eight extensions of time, which totaled approximately eighteen months, to file his opposition. (*See* ECF Nos. 103-104, 109-110, 112-113, 116-117, 118, 120-24, 126, 129.)

1        3.  The Clerk of Court be directed to close this case.

2        These findings and recommendations are submitted to the United States District Judge

3 assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **twenty-one**

4 **(21) days** after being served with these findings and recommendations, any party may file written

5 objections with the Court. Such a document should be captioned "Objections to Magistrate

6 Judge's Findings and Recommendations." Any reply to the objections shall be served and filed

7 within fourteen (14) days after service of the objections. The parties are advised that failure to file

8 objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v.*

9 *Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394

10 (9th Cir. 1991)).

11

12 IT IS SO ORDERED.

13    Dated:  **March 30, 2022**          /s/

14                                                            UNITED STATES MAGISTRATE JUDGE